# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| BRANDON HANNA<br>669 Gilbert Street<br>Columbus, Ohio 43205,<br><br>     Plaintiff,<br><br>    v.<br><br>RYDER TRUCK RENTAL, INC.<br>2600 E West Belt Drive<br>Columbus, Ohio 43228<br><br>  **Serve Also:**<br>  Ryder Truck Rental, Inc.<br>  c/o Corporate Creations Network, Inc.<br>  119 E. Court Street<br>  Cincinnati, Ohio 45202<br><br>  -and-<br><br>KEVIN WILLIAMS<br>2600 E West Belt Drive<br>Columbus, Ohio 43228<br><br>     Defendants. | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Brandon Hanna, by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

## PARTIES, VENUE, & JURISDICTION

1. Hanna is a resident of the city of Columbus, Franklin County, Ohio.

2. At all times herein, Hanna was acting in the course and scope of his employment.

3. Ryder Truck Rental, Inc. ("Ryder") is a foreign corporation that does business at 2600 E West Belt Drive, Columbus, Franklin County, Ohio 43228 ("West Belt Location").

4. Ryder is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq*.

5. Williams is a resident of the state of Ohio.

6. At all times herein, Williams was acting in the course and scope of his employment.

7. Williams is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Ryder and who acted directly or indirectly in the interest of Ryder in relation to its employees.

8. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hanna is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e; and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq*.

9. All material events alleged in this Complaint occurred in Franklin County, Ohio.

10. This Court has supplemental jurisdiction over Hanna's state law claims pursuant to 28 U.S.C. § 1367 as Hanna's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. Within 300 days of the conduct alleged below, Hanna filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00130 against Ryder ("Hanna EEOC Charge").

13. On or about April 21, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Hanna regarding the Charges of Discrimination brought by Hanna against Ryder in the Hanna EEOC Charge.

14. Hanna received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

15. Hanna has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

16. Hanna has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

17. In or about November 2015, Hanna began working for Ryder.

18. Ryder initially employed Hanna as service coordinator.

19. In or about 2019, Ryder changed Hanna's job title to shop parts clerk.

20. Hanna worked at the West Belt Location.

21. Ryder was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

22. Ryder has more than 50 employees within 75 miles of the West Best Location.

23. At all times relevant herein, Hanna was employed by Ryder for at least 12 months and had at least 1,250 hours of service with Ryder and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

24. Hanna is African American.

25. Williams is Caucasian.

26. In or about the fall of 2019, Williams became service manager at the West Belt Location.

27. Williams was service manager for Ryder.

28. Williams did not participate in the decision to hire Hanna.

29. Williams was Hanna's direct superior at Ryder.

30. During Hanna's employment at Ryder, there was only one other African-American employee at the West Belt Location, Charte (Last Name Unknown).

31. Williams was not involved in the decision to hire Charte LNU.

32. Williams treated Hanna and Charte LNU poorly compared to their Caucasian coworkers ("Disparate Treatment").

33. Among the Disparate Treatment, Williams gave favorable assignments to Caucasian employees, compared to Hanna and Charte LNU.

34. Among the Disparate Treatment, Williams spoke rudely to Hanna and Charte LNU but not to their similarly-situated Caucasian coworkers.

35. Among the Disparate Treatment, Williams gave Hanna a written warning for tardiness ("Write-Up").

36. Hanna was less than 15 minutes late when Williams gave Hanna the Write-Up.

37. During Hanna's employment, Hanna's Caucasian coworkers were more than 15 minutes late on more than one occasion.

38. Williams did not give written warnings to Hanna's Caucasian coworkers who were more than 15 minutes late.

39. Williams gave Hanna the Disparate Treatment because of his race.

40. In or about January 2020, Hanna and Charte LNU discussed the Disparate Treatment.

41. In or about January 2020, Hanna opposed race discrimination.

42. In or about January 2020, Hanna and Charte LNU decided that Charte LNU would file a Charge of Discrimination in the EEOC because of the discrimination both of them were facing at work.

43. Hanna and Charte LNU decided that Charte LNU would file a Charge of Discrimination because they opposed race discrimination.

44. Charte LNU filed a Charge of Discrimination in the EEOC because of the Disparate Treatment.

45. On or about February 14, 2020, Hanna's wife gave birth to Hanna's child.

46. Hanna requested two weeks of leave from Ryder for the birth of his child.

47. Ryder granted Hanna's request for leave for the birth of his child.

48. In or about February 2020, Hanna took two weeks of leave ("Parental Leave").

49. In or about February 2020, Hanna was eligible for FMLA leave.

50. The Parental Leave was qualified FMLA leave.

51. In or about March 2020, Hanna returned from his Parental Leave.

52. On April 14, 2020, Hanna had symptoms similar to COVID-19, so his doctor instructed him to stay home from work until April 29, 2020.

53. On or about April 14, 2020, Hanna was eligible for FMLA leave.

54. On or about April 14, 2020, Hanna requested leave due to his illness.

55. On or about April 14, 2020, Ryder approved Hanna's request for leave.

56. On or about April 14, 2020, Hanna took leave due to his illness ("COVID-19 Leave").

57. On or about April 29, 2020, Hanna returned to work after the COVID-19 Leave.

58. On or about April 29, 2020, Ryder suspended Hanna, pending an investigation ("Suspension").

59. Williams made the decision to give Hanna the Suspension.

60. On or about April 29, 2020, Williams informed Hanna about the Suspension ("April 29 Meeting").

61. In the April 29 Meeting, Williams alleged that Hanna had falsified documentation by filing filters under the wrong part number.

62. In the April 29 Meeting, Hanna explained that the correct number was not in the system, so he had filed the filters under a different part number.

63. Former service manager Brian Kudlin trained Hanna to file parts under a different part number if the correct number was not in the system.

64. Hanna filed parts in the manner he was trained to do so.

65. Hanna's coworkers also filed parts under a different part number if the correct number was not in the system.

66. Ryder did not suspend any employees at the West Belt Location, other than Hanna, for filing parts under a different part number if the correct number was not in the system.

67. The Suspension was an adverse employment action.

68. The Suspension was an adverse action.

69. Defendants gave Hanna the Suspension in retaliation for his use of qualified FMLA leave.

70. Defendants gave Hanna the Suspension in retaliation for his opposing race discrimination.

71. Defendants gave Hanna the Suspension because of his race.

72. On or about April 30, 2020, Hanna emailed Ryder's ethics committee and reported Williams's race discrimination ("Email to Ethics").

73. In the Email to Ethics, Hanna explained that he believed he had been suspended because of his race.

74. In the Email to Ethics, Hanna notified the ethics committee about Charte's Charge of Discrimination.

75. Ryder has a policy against discrimination ("Discrimination Policy").

76. Ryder's Discrimination Policy precludes retaliation against employees who complain about discrimination.

77. Alternatively, retaliation against employees who complain about discrimination is permitted by Ryder.

78. Ryder's Discrimination Policy precludes intimidation against employees who complain about discrimination.

79. Alternatively, intimidation against employees who complain about discrimination is permitted by Ryder.

80. Ryder's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

81. Ryder's Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

82. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by Ryder.

83. Ryder's Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

84. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by Ryder.

85. The Disparate Treatment violates the Discrimination Policy.

86. Ryder has a policy to investigate reports of violations of its Discrimination Policy.

87. An investigation should include interviewing the complainant.

88. An investigation should include interviewing the subject of the complaint.

89. An investigation should include interviewing the subject of the reported discrimination.

90. An investigation should include interviewing witnesses to the reported discrimination.

91. An investigation should include getting a written statement from the complainant.

92. An investigation should include getting a written statement from the subject of the complaint.

93. An investigation should include getting a written statement from the subject of the reported discrimination.

94. In response to Hanna's Email to Ethics, Ryder did not interview Hanna.

95. In response to Hanna's Email to Ethics, Ryder did not interview Williams.

96. In response to Hanna's Email to Ethics, Ryder did not interview witnesses.

97. In response to Hanna's Email to Ethics, Ryder did not get a written statement from Hanna.

98. In response to Hanna's Email to Ethics, Ryder did not get a written statement from Williams.

99. In response to Hanna's Email to Ethics, Ryder did not get a written statement from witnesses.

100. Ryder did not investigate Hanna's Email to Ethics.

101. In response to Hanna's Email to Ethics, Ryder did not give Williams a verbal warning.

102. In response to Hanna's Email to Ethics, Ryder did not give Williams a written warning.

103. In response to Hanna's Email to Ethics, Ryder did not give Williams a final warning.

104. In response to Hanna's Email to Ethics, Ryder did not give Williams a suspension.

105. In response to Hanna's Email to Ethics, Ryder did not give Williams a demotion.

106. In response to Hanna's Email to Ethics, Ryder did not terminate Williams's employment.

107. In response to Hanna's Email to Ethics, Ryder did not discipline Williams at all.

108. On or about April 30, 2020, Ryder terminated Hanna's employment ("Termination").

109. On or about April 30, 2020, Williams informed Hanna about the Termination via telephone ("Termination Call").

110. In the Termination Call, Williams alleged that the reason for the Termination was that Hanna filed parts under the wrong part number ("Termination Excuse").

111. The Termination Excuse was not the real reason for the Termination.

112. The Termination Excuse was not a sufficient basis to justify the Termination.

113. The Termination Excuse was pretextual.

114. Ryder has a progressive disciplinary policy ("Discipline Policy").

115. A verbal warning is the lowest level of discipline in the Discipline Policy.

116. Hanna did not receive a verbal warning before the Termination.

117. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

118. Hanna did not receive a written warning before the Termination.

119. A termination is the highest level of discipline in the Discipline Policy.

120. Ryder knowingly skipped progressive disciplinary steps in terminating Hanna.

121. Ryder knowingly terminated Hanna's employment.

122. Ryder knowingly took an adverse employment action against Hanna.

123. Ryder knowingly took an adverse action against Hanna.

124. Ryder intentionally skipped progressive disciplinary steps in terminating Hanna.

125. Ryder intentionally terminated Hanna's employment.

126. Ryder intentionally took an adverse employment action against Hanna.

127. Ryder intentionally took an adverse action against Hanna.

128. Ryder knew that skipping progressive disciplinary steps in terminating Hanna would cause Hanna harm, including economic harm.

129. Ryder knew that terminating Hanna would cause Hanna harm, including economic harm.

130. Ryder willfully skipped progressive disciplinary steps in terminating Hanna.

131. Ryder willfully terminated Hanna's employment.

132. Ryder willfully took an adverse employment action against Hanna.

133. Ryder willfully took an adverse action against Hanna.

134. On or about April 30, 2020, Ryder terminated Hanna's employment in retaliation for his use of qualified FMLA leave.

135. On or about April 30, 2020, Ryder terminated Hanna's employment in retaliation for his opposing race discrimination.

136. On or about April 30, 2020, Ryder terminated Hanna's employment because of his race.

137. As a direct and proximate result of Defendants' conduct, Hanna suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: RETALIATION IN VIOLATION OF FMLA

### (All Defendants)

138. Hanna restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

139. During his employment, Hanna utilized FMLA leave.

140. After Hanna utilized his qualified FMLA leave, Defendants retaliated against him.

141. Defendants retaliated against Hanna by terminating his employment.

142. Defendants willfully retaliated against Hanna in violation of 29 U.S.C. § 2615(a).

143. As a direct and proximate result of Defendants' wrongful conduct, Hanna is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT II: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

### (Defendant Ryder)

144. Hanna restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

145. Throughout his employment, Hanna was fully competent to perform his essential job duties.

146. Ryder treated Hanna differently than other similarly-situated employees based on his race.

147. Ryder violated Title VII by discriminating against Hanna due to his race.

148. On or about April 30, 2020, Ryder terminated Hanna's employment without just cause.

149. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

150. Ryder terminated Hanna based on his race.

151. Ryder violated Title VII when it terminated Hanna based on his race.

152. As a direct and proximate result of Ryder's conduct, Hanna has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
### (All Defendants)

153. Hanna restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

154. Throughout his employment, Hanna was fully competent to perform his essential job duties.

155. Defendants treated Hanna differently than other similarly-situated employees based on his race.

156. Defendants violated R.C. § 4112.02(A) *et seq.* by discriminating against Hanna due to his race.

157. On or about April 30, 2020, Ryder terminated Hanna's employment without just cause.

158. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

159. Defendants terminated Hanna based on his race.

160. Defendants violated R.C. § 4112.01 *et seq.* when they terminated Hanna based on his race.

161. As a direct and proximate result of Defendants' conduct, Hanna has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV:  RETALIATION IN VIOLATION OF TITLE VII

### (Defendant Ryder)

162. Hanna restates each and every prior paragraph of this complaint, as if it were fully restated herein.

163. Hanna opposed the Disparate Treatment.

164. As a result of Ryder's discriminatory conduct described above, Hanna complained about the discrimination he was experiencing.

165. Subsequent to Hanna's reporting of discrimination to Ryder's ethics committee, Ryder terminated Hanna's employment.

166. Ryder's actions were retaliatory in nature based on Hanna's opposition to the unlawful discriminatory conduct.

167. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing unlawful discrimination.

168. As a direct and proximate result of Ryder's conduct, Hanna suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

### (All Defendants)

169. Hanna restates each and every prior paragraph of this complaint, as if it were fully restated herein.

170. Hanna opposed the Disparate Treatment.

171. As a result of Defendants' discriminatory conduct described above, Hanna complained about the discrimination he was experiencing.

172. Subsequent to Hanna's reporting of discrimination to Ryder's ethics committee, Ryder terminated Hanna's employment.

173. Defendants' actions were retaliatory in nature based on Hanna's opposition to the unlawful discriminatory conduct.

174. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

175. As a direct and proximate result of Defendants' conduct, Hanna suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT VI: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

**(Defendant Williams)**

176. Hanna restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

177. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

178. Williams aided, abetted, incited, coerced, and/or compelled Ryder's discriminatory termination of Hanna.

179. Williams aided, abetted, incited, coerced, and/or compelled Ryder's discriminatory suspension of Hanna's employment.

180. Williams aided, abetted, incited, coerced, and/or compelled Ryder's discriminatory treatment of Hanna.

181. Williams violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

182. As a direct and proximate result of Williams's conduct, Hanna has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Hanna respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i)    Requiring Ryder to abolish discrimination, harassment, and retaliation;

    (ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Ryder to restore Hanna to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Hanna for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Hanna claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Brandon Hanna*

**JURY DEMAND**

Plaintiff Hanna demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)